UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CA, INC. d/b/a CA TECHNOLOGIES,

                Plaintiff,                            MEMORANDUM AND ORDER
                                                                     17-CV-3623

    - against -

NETWORK SOLUTIONS PROVIDER, INC.,

                Defendant.
------------------------------------------------------------x
GLASSER, Senior United States District Judge:

Plaintiff brought this action against Defendant on June 15, 2017. (ECF No. 1 ("Compl.")). Defendant was duly served with the summons and complaint on October 5, 2017 (ECF No. 19-8) but failed to respond to the complaint. On January 2, 2018, the Clerk of the Court issued a Certificate of Default. (ECF No. 18). Presently before the Court is Plaintiff's motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2). (ECF No. 19).

## BACKGROUND

This is an action for breach of contract and account stated based on diversity jurisdiction. Plaintiff CA, Inc. d/b/a CA Technologies ("CA"), a Delaware corporation with its principal place of business in New York, is a "world-leading provider of information technology management software and solutions." (Compl. ¶¶ 3, 8). Defendant Network Solutions Provider, Inc. ("NSP") is incorporated in and has its principal place of business in California. (Compl. ¶ 4).

On or about January 29, 2016, CA entered into a written Service Provider Order Form (Compl. Ex. A) (the "Agreement"), by the terms of which it was agreed that CA would sell and NSP would purchase software products and services for a total price of $207,575.00. (Compl. ¶¶ 9-10; Compl. Ex. A, at 1). The Agreement is governed by New York law. (Compl. Ex. A, at 8).

The purchase price was to be paid in three installments: $92,975.00 due January 29, 2016, $57,300.00 due January 15, 2017, and $57,300.00 due January 15, 2018. (Compl. Ex. A, at 1). CA alleges that it performed all of its obligations under the Agreement and that it billed NSP for a total of $150,275.00, which NSP never paid. (Compl. ¶¶ 12-14; Compl. Ex. B).

## DISCUSSION

### I. Standard of Review

"A default is an admission of all well-pleaded allegations against the defaulting party." *Natale v. County Ford Ltd.*, 2014 WL 4537501, at *3 (E.D.N.Y. Aug. 20, 2014) (alterations omitted) (quoting *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). "Additionally, a plaintiff is entitled to all reasonable inferences from the evidence it offers." *Id.* (alterations, citations and quotation marks omitted). "In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim." *United States Securities and Exchange Commission v. Coronati*, 2016 WL 6462240, at *2 (E.D.N.Y. Oct. 14, 2016) (quoting *Brown v. Gabbidon*, 2007 WL 1423788, at *2 (S.D.N.Y. May 14, 2007)). However, "unlike allegations pertaining to liability, allegations of damages are not deemed admitted in the context of a default judgment and the damages sought are not automatically awarded." *Id.* (alterations omitted) (quoting *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labormanagement Cooperation, Pension and Welfare Funds v. Town & Country Wood Flooring LLC*, 2013 WL 4807110, at *4 (E.D.N.Y. Sept. 9, 2013)). "The Court must examine whether the movant has provided adequate support for the requested relief … by an inquest hearing or on papers." *Id.* (internal citations omitted).

## II. Liability

Accepting the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in CA's favor, CA established that it performed under the terms of the Agreement (Compl. ¶ 13) and that NSP defaulted on its payment obligations thereunder. CA sent invoices to NSP in January and February 2016 totaling $92,975.00, which correspond to the first installment that NSP was required to pay. (Compl. Ex. A, at 1-2; Compl. Ex. B, at 1-3). In October 2016, CA sent an invoice to NSP for $57,300, corresponding to the second installment. (Compl. Ex. A, at 1; Compl. Ex. B, at 4). Because CA alleges that these were never paid (Compl. ¶¶ 12, 14), it has met its burden with respect to liability for breach of contract. *See In re R. Hoe & Co., Inc.*, 508 F.2d 1126, 1129 (2d Cir. 1974) ("[O]rdinarily an unjustified failure to perform all or any part of what is promised in a contract … is a breach for which the aggrieved party is entitled to compensatory damages").

In addition, CA has established liability for account stated. "[U]nder New York law an 'account stated' refers to a promise by a debtor to pay his creditor a stated sum of money that the parties had agreed upon as the amount due." *Peace Mark (Holdings) Ltd. v. International Watch Group, Inc.*, 2010 WL 986559, at *3 (E.D.N.Y. Feb. 1, 2010), *report and recommendation adopted*, 2010 WL 1005780 (E.D.N.Y. Mar. 17, 2010). Under this theory, "the promise (either express or implied) must be founded upon previous transactions creating the relationship of debtor and creditor." *Id*. "The transactional history may be evidenced by invoices submitted to the defendant on a regular basis, such as those commonly included with the delivery of goods to a purchaser." *Id.* Here, CA's invoices "serve to establish a running account" with NSP for the software products. *Id.* at *4. "As [NSP] has not responded to [CA]'s complaint, nor appeared in

3

this action, no objections to the account or the invoices submitted have been proffered. Thus, plaintiff has [set] forth a prima facie case for an account stated . . . ." *Id.*

### III.   Damages

With respect to damages, the sworn affidavit of Philip Blum, a Vice President of CA, and copies of the invoices submitted therewith are sufficient to establish that the unpaid amount was $150,275.00. (ECF Nos. 19-1 ("Blum Aff.") ¶¶ 5-8, 19-5). *See Natale*, 2014 WL 4537501, at *4 ("It is proper for the Court to 'rely on detailed affidavits or documentary evidence … to evaluate the proposed sum'") (quoting *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *id.* ("Here, plaintiffs have submitted affidavits from counsel … , along with documentary support for the amounts sought. Defendants have submitted no papers. Accordingly, a hearing on the issue of damages is not necessary"). Therefore, CA is entitled to damages in the amount of $150,275.00.[1]

### IV.   Pre-Judgment Interest

CA also seeks pre-judgment interest. Where the court's jurisdiction is premised on diversity, an award of pre-judgment interest is governed by state law. *See Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir. 2008). Under New York law, the applicable statutory rate of

---

[1] Inexplicably, the final paragraph of the Blum Affidavit claims damages of ***$153,725***, representing $92,975 for the first installment and ***$60,750*** for the second installment. (Blum Aff. ¶ 12). No explanation is given for this discrepancy, which is inconsistent with the remainder of the affidavit (Blum Aff. ¶¶ 5-8, 11), the complaint (Compl. ¶¶ 14), and the invoices themselves (Compl. Ex. B, at 4 (invoice issued Oct. 14, 2016)). This error was repeated in CA's memorandum of law in support of default judgment. (ECF No. 19-2, at 2-3). The Court will assume that this figure was included inadvertently; however, to the extent CA is actually claiming damages of $60,750 for the second installment, the Court holds that it has not submitted sufficient documentation to justify these additional damages.

4

prejudgment interest is 9% per annum. N.Y. Civ. Prac. L. & R. §§ 5001(a), 5004.[2] Pre-judgment interest accrues "from the earliest ascertainable date the cause of action existed"; where, as here, "damages were incurred at various times," interest may be computed "upon each item from the date it was incurred . . . ." *Id.* § 5001(b). The burden is on the plaintiff to demonstrate its entitlement to pre-judgment interest. *See Albany Molecular Research, Inc. v. Waterville Valley Technologies, Inc.*, 323 F.R.D. 489, 495 (N.D.N.Y. 2018).

In this case, it is unclear when CA's respective causes of action accrued under the terms of the Agreement. Blum affirms in his sworn affidavit that the Agreement's payment terms were "net 45," meaning that CA's cause of action with respect to a particular payment would accrue if NSP failed to make the payment within 45 days after the due date. (Blum Aff. ¶ 7). Hence, according to Blum, CA's cause of action with respect to the first missed payments totaling $92,975.00 accrued on March 14, 2016 (45 days after the January 29, 2016 due date), and its cause of action with respect to the second missed payment of $57,300 accrued on March 1, 2017 (45 days after the January 15, 2017 due date). (Blum Aff. ¶ 7). However, this characterization appears to be inconsistent with one of the invoices that CA sent as part of the first installment,

---

[2] Under New York law, parties are generally free to set a different rate of prejudgment interest by contract, subject to State usury laws. *See Nuera Communications, Inc. v. Telron Communications USA, Inc.*, 2002 WL 31778796, at *3 (S.D.N.Y. Nov. 15, 2002); *23 East 39th Street Management Corp. v. 23 East 39th Street Developer, LLC,* 134 A.D.3d 629, 631 (N.Y. App. Div. 1st Dept. 2015); *Board of Managers of 25th Charles Street Condominium v. Seligson*, 126 A.D.3d 547, 549, 4 N.Y.S.3d 40 (N.Y. App. Div. 1st Dept. 2015); Siegel, N.Y. Prac. § 412 (6th ed.). Here, the Agreement provides: "CA may charge interest of one percent (1%) per month compounded for the entire overdue period or the maximum amount allowed by law if fees are not paid by the due date." (Compl. Ex. A, at 6). Because this 1% rate is applied monthly, it represents a higher annualized rate of interest than the statutory rate of 9% per annum. However, for whatever reason, CA's motion papers request only that the Court apply the lower statutory rate. (ECF No. 19-1 ¶ 12; ECF No. 19-2, at 3; ECF No. 19-10, at 1-2). Because "defendants are benefitted by [this] application," *Nuera Communications*, 2002 WL 31778796, at *3, the Court will apply the statutory interest rate and need not determine whether CA would have been entitled to prejudgment interest at the higher, contractual rate.

which reads: "**Terms** Within 60 Days Due Net." (Compl. Ex. B, at 3 (invoice dated February 4, 2016)). Confusingly, the payment schedule on the first page of the Agreement contains statements suggesting either a net 45 day and a net 60 day term. (Compl. Ex. A, at 1). In light of this possibly conflicting documentary evidence, the declaration of Philip Blum is insufficient to establish that CA's causes of action accrued based on a net 45 day term rather than a net 60 day term.[3] Therefore, the Court will calculate pre-judgment interest based on a net 60 day term as follows:

- For the $92,975 payment due January 29, 2016, pre-judgment interest shall accrue at the rate of 9% per annum from March 29, 2016 and shall equal $92,975 x 9% x (2 + [274 ÷ 365] ) = $23,017.04.
- For the $57,300 payment due January 15, 2017, pre-judgment interest shall accrue at the rate of 9% per annum from March 16, 2017 and shall equal $57,300 x 9% x (1 + [287 ÷ 365] ) = $9,211.95.

Accordingly, total pre-judgment interest shall be $32,228.99.

V.    **Post-Judgment Interest**

CA seeks post-judgment interest pursuant to 28 U.S.C. § 1961. An award of post-judgment interest is mandatory on awards in civil cases. *See Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996). Accordingly, Plaintiff will be awarded post-judgment interest on its monetary award calculated in accordance with 28 U.S.C. § 1961.

---

[3] From a monetary perspective, the difference between calculating pre-judgment interest based on a net 45 day term and a net 60 day term is less than $600.

## VI. Costs

The Federal Rules of Civil Procedure provide that, "[u]nless a federal statute, th[e] [R]ules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The burden is on the prevailing party to adequately document and itemize the costs requested. *See Local 363, United Electrical Workers of America, International Union of Journeymen and Allied Trades v. Laser Lite Electrical, Inc.*, 2017 WL 9939041, at *6 (E.D.N.Y. Nov. 9, 2017). Here, CA's Bill of Costs indicates that CA paid a $400.00 court filing fee and $385.00 in fees for service of the summons and complaint. (ECF No. 19-11). Accordingly, costs will be awarded in the amount of $785.00.

## CONCLUSION

For the reasons set forth above, CA's motion for default judgment is **GRANTED**. Judgment shall be entered in favor of CA and against NSP in the amount of $150,275.00 in compensatory damages, plus pre-judgment interest in the amount of $32,228.99 and costs in the amount of $785.00. CA shall be entitled to post-judgment interest from the date of judgment pursuant to 28 U.S.C. § 1961. The Clerk of the Court shall enter judgment in accordance herewith.

SO ORDERED.

Dated:     Brooklyn, New York
            December 28, 2018

/s
I. Leo Glasser                         U.S.D.J.